UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| WILLIE JOE JOHNSON,<br><br>        Plaintiff,<br><br>v.<br><br>DWIGHT L. FONDREN - Warden,<br>Cpt. PUMMILL, Unit Manager(s) --<br>J. JARVIS and G. VILLEREAL,<br>Lt. SKOWRONEK, Chaplain - PULJU,<br>Officers – TVEDT, MALEY, VOLT,<br>Mr. & Mrs. ARMSTRONG, MARIO,<br>Food Service Personnel – R. BERGSTAD,<br>Counselor(s) – ANDERSON & JONES,<br>Dr. SCHUSTER, and Health Care<br>Provider, Lt(s) – RHODES and RISER,<br>et al.,<br><br>        Defendants. | Civil File No. 08-509 (MJD/AJB)<br><br>**REPORT AND RECOMMENDATION** |

       Plaintiff, a federal prisoner, commenced this action by filing a complaint seeking relief for various alleged violations of his federal constitutional rights. (Docket No. 1.) The matter has been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1. For the reasons discussed below, the Court recommends that this action be summarily dismissed pursuant to 28 U.S.C. § 1915A.

**I. BACKGROUND**

       When Plaintiff filed his complaint, he did not pay the $350.00 filing fee required by 28 U.S.C. § 1914(a), but he instead filed an application for leave to proceed in forma pauperis, ("IFP"). (Docket No. 2.) Because Plaintiff is a prisoner, he cannot proceed IFP unless he pays the initial partial filing fee required by 28 U.S.C. § 1915(b)(1). Based on the

information furnished in Plaintiff's IFP application, the Court determined that he was required to pay an initial partial filing fee in the amount of $25.28. Plaintiff was ordered to pay that amount, (see Docket No. 3), and he later did so, (see Docket No. 7).

Shortly after Plaintiff filed his original complaint, he requested leave to amend his pleading. (Docket No. 6.) The Court found that Plaintiff's request for leave to amend could not be granted, because he did not comply with the Local Rule applicable to such requests, (LR. 15.1). However, the Court pointed out that Plaintiff could still amend "once as a matter of course" pursuant to Fed. R. Civ. P. 15(a), and he was given twenty days to do so. (See Order dated March 24, 2008; [Docket No. 8].) Plaintiff subsequently requested an extension of the deadline for amending, (Docket No. 9), and that request was granted. The Court's order dated April 15, 2008, (Docket No. 10), gave Plaintiff until May 15, 2008, to file a new complaint.

The extended deadline for amending passed several weeks ago, and Plaintiff still has not filed a new complaint.[1] Therefore, Plaintiff is deemed to have waived his opportunity to amend, and this action will proceed based on the original complaint.[2]

Plaintiff is attempting to sue eighteen named Defendants for allegedly violating his federal constitutional rights while he was confined at the Federal Correctional Institute in

---

[1] On April 25, 2008, Plaintiff filed an anomalous document entitled "Notice of Clarification on Civil Rights Complaint § 1983 Case No. 08-cv-509," (Docket No. 11), but that submission clearly is not an amended complaint.

[2] Plaintiff has been advised (repeatedly) that if he did not file an amended complaint, then his original complaint would be the operative pleading in this matter, and the original complaint would be subject to initial screening under 28 U.S.C. § 1915A. (See Order dated April 15, 2008, [Docket No. 10], p. 1.)

2

Sandstone, Minnesota, ("FCI-Sandstone").[3]  Plaintiff's complaint is very poorly organized, and it does not clearly describe what each individual Defendant allegedly did, (or failed to do), that allegedly violated Plaintiff's constitutional rights.  Giving the complaint the benefit of an extremely generous construction, it appears that Plaintiff is claiming that Defendants violated his constitutional rights by (i) interfering with his religious practices, (ii) allowing him to be exposed to another inmate who was sick, (iii) causing him to be placed in segregated confinement, and (iv) making disparaging remarks about his race, religion, intelligence, and character.

Plaintiff is seeking a judgment against Defendants for "$1,016,002.00 + 16 letters [and] a hold on all Defendents [sic] property(s) pending outcome of complaint." (Complaint, p. 5, "Request for Relief.")

## II.  DISCUSSION

Because Plaintiff is a prisoner who is seeking redress from government employees, his pleading must be screened pursuant to 28 U.S.C. § 1915A.  That statute, which is part of the Prison Litigation Reform Act, ("PLRA"), requires federal courts to review every prisoner complaint brought against governmental agents or entities "before docketing, if feasible or, in any event, as soon as practicable after docketing."  28 U.S.C. § 1915A(a).  The court must determine which aspects of the complaint are actionable and should be allowed to proceed.  To the extent that the pleading, on its face, fails to state a cognizable claim, it must be dismissed.  28 U.S.C. § 1915A(b)(1).

---

[3] It appears that Plaintiff was transferred to a different federal prison sometime after he commenced this action.

To state actionable civil rights claims, as Plaintiff is attempting to do here, a complainant must allege a set of historical facts, which, if proven true, would demonstrate that the named defendant(s) violated the complainant's federal constitutional rights while acting under color of law. <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988). Although federal courts must "view pro se pleadings liberally, such pleadings may not be merely conclusory: <u>the complaint must allege facts</u>, which if true, state a claim as a matter of law." <u>Martin v. Aubuchon</u>, 623 F.2d 1282, 1286 (8th Cir. 1980) (emphasis added).

Plaintiff's current pleading fails to state any actionable civil rights claim, because it does not describe any acts or omissions by any of the named Defendants that violated Plaintiff's federal constitutional rights. Even with the benefit of liberal construction, Plaintiff's complaint does not show any actionable violation of his constitutional rights.

**(i) First Amendment Claim**

Plaintiff apparently is claiming, <u>inter alia</u>, that one or more of the Defendants violated his First Amendment rights by interfering with his right to exercise his religious beliefs. However, the allegations in the complaint do not support any such claim.

Plaintiff first alleges that Defendant Westley Pummiill told Defendant R. Bergstad to order Plaintiff to "remove his religious head-gear or be placed in the segregation." (Complaint, p. 2.) This allegation is not sufficient to support a First Amendment claim, because (a) there is nothing to indicate that Defendant Bergstad actually did order Plaintiff to do anything, (b) there is no indication as to whether or not Plaintiff complied with any order that Bergstad might have given, and (c) there is no indication that Plaintiff suffered any adverse consequences as a result of any order that Bergstad might have given. Furthermore, there are no allegations suggesting that Plaintiff's religious beliefs require him

to wear the "religious head-gear" at issue. In fact, there are no allegations showing that Plaintiff holds any specific religious beliefs at all.

Plaintiff next alleges that while he was talking to Defendant Bergstad and another Defendant named Pulju, a third Defendant, Bonnie Villereal, "interrupted to add her own version of Plaintiff's Koofi (religious head-gear)... [and] attempted to intimidated [sic] Plaintiff in her questioning of what Unit did Plaintiff live in." (Complaint, p. 3.) This allegation does not describe any actionable violation of Plaintiff's First Amendment rights by Defendant Villereal, (or by any of the other Defendants).

Plaintiff's complaint does not describe any other incidents, which, if proven to have occurred, would constitute a violation of his First Amendment rights. Thus, the Court finds that Plaintiff has failed to state any cause of action based on the First Amendment.

**(ii) Eighth Amendment Claim**

Plaintiff seems to be further claiming that some of the named Defendants violated his Eighth Amendment rights, because they failed to transfer another inmate, named Faulkner, to the Federal Medical Center in Rochester, Minnesota. (Complaint, p. 2.) Plaintiff alleges that Faulkner was suffering from a staph infection, and he apparently believes that Faulkner should have been removed from FCI-Sandstone because his infection was contagious. Plaintiff claims that various prison officials at FCI-Sandstone, (apparently including some of the named Defendants), said that Faulkner would not be transferred to another prison, and this allegedly caused Plaintiff "to wonder and worry about [his] personal physical health." (Complaint, addendum p. 2.) These allegations clearly fail to describe any actionable violation of Plaintiff's Eighth Amendment rights, (or any other constitutional rights).

To state an actionable civil rights claim based on the Eighth Amendment, a prisoner must allege facts showing that prison officials were personally aware of some particular "excessive risk" to his health or safety, and knowingly and deliberately disregarded that risk. Williams v. Delo, 49 F.3d 442, 446 (8th Cir. 1995). The prisoner's complaint must allege facts showing that the named defendant(s) harmed him by deliberately disregarding his "serious medical needs," (Estelle v. Gamble, 429 U.S. 97, 104-05 (1976)), forcing him to live in conditions that do not meet the minimum standards of a civilized society, (Rhodes v. Chapman, 452 U.S. 337, 347 (1981)), using excessive physical force, (Hudson v. McMillian, 503 U.S. 1, 6-7 (1992)), or deliberately exposing him to an obvious risk of physical harm, (Farmer v. Brennan, 511 U.S. 825, 834 (1994)). Plaintiff's complaint does not include any factual allegations showing any such mistreatment.

Furthermore, an Eighth Amendment claimant must allege facts showing that the defendant(s) caused him to suffer some actual, identifiable harm. "While a serious injury is not necessary, some actual injury is required in order to state an Eighth Amendment violation." White v. Holmes, 21 F.3d 277, 281 (8th Cir. 1994) (emphasis added). Here, there are no allegations suggesting that any Defendant caused Plaintiff to suffer any actual physical injury. For this additional reason, Plaintiff has failed to plead an actionable Eighth Amendment claim.

**(iii) Segregated Confinement Claim**

Plaintiff also seems to be claiming that some of the named Defendants violated his constitutional rights by placing him in segregated confinement. Plaintiff apparently believes that he has a constitutionally protected liberty interest in remaining in the general prison population, and that he was deprived of that interest without being accorded the protections

of due process.

However, a constitutionally protected liberty interest will be found, and the protections of due process will therefore come into play, only when a prisoner has shown the type of unusual hardship, or dramatic departure from ordinary prison life, that is contemplated in Sandin v. Conner, 515 U.S. 472 (1995). In Sandin, the Supreme Court held that a prisoner cannot sustain a due process claim unless he can show that he suffered an "atypical and significant hardship... in relation to the ordinary incidents of prison life." Id. at 484. In Moorman v. Thalacker, 83 F.3d 970, 972 (8th Cir. 1996), the Court of Appeals interpreted Sandin to mean that prisoner due process rights are implicated only when there have been "deprivations which work such major disruptions in a prisoner's environment and life that they present dramatic departures from the basic conditions and ordinary incidents of prison sentences." (Emphasis added.)

Plaintiff has not pleaded an actionable due process claim here, because he has not alleged any facts showing the type of severe hardship that Sandin requires. It is well-settled that, for due process purposes, assignment to segregated confinement is considered to be a normal and expectable aspect of a prison sentence. Therefore, segregated confinement alone is not an "atypical and significant hardship" that can give rise to a protected liberty interest. See Portley-el v. Brill, 288 F.3d 1063, 1065 (8th Cir. 2002) ("[w]e have consistently held that administrative and disciplinary segregation are not atypical and significant hardships under Sandin"); Phillips v. Norris, 320 F.3d 844, 847 (8th Cir. 2003) (reiterating that "demotion to segregation, even without cause, is not itself an atypical and significant hardship"). Because Plaintiff has not shown that he has suffered any atypical and significant hardship that caused him to be deprived of a protected liberty

interest, he was not entitled to the procedural benefits of due process. Therefore, Plaintiff has not pleaded an actionable constitutional claim based on his segregated confinement.[4]

### (iv) Degrading Comments Claim

Finally, Plaintiff alleges that some of the Defendants made various impertinent and degrading comments to him about his race, his religion, his intelligence, and his general character and demeanor. He apparently believes that those remarks somehow violated his federal constitutional rights. However, while offensive verbal harassment of prisoners is obviously inappropriate and unprofessional, such conduct will not, by itself, support a federal civil rights claim. Martin v. Sargent, 780 F.2d 1334, 1338 (8th Cir. 1985) (abusive language and/or verbal harassment, is not, by itself, unconstitutional, and will not support a civil rights cause of action); Doe v. Gooden, 214 F.3d 952, 955 (8th Cir. 2000) (same). Therefore, Plaintiff's various allegations of verbal abuse will not support any actionable civil rights claim.

## III. CONCLUSION

For the reasons discussed above, the Court concludes that Plaintiff's complaint fails to state any cause of action on which relief can be granted. Therefore, this case must be summarily dismissed pursuant to 28 U.S.C. § 1915A(b), and Plaintiff's application for leave to proceed in forma pauperis, (Docket No. 2), must be denied. See 28 U.S.C. § 1915(e)(2)(B)(ii).

---

[4] Even if Plaintiff were entitled to due process, his complaint does not allege any facts showing that he was placed in segregated confinement without being afforded due process. For this additional reason, his allegations regarding segregated confinement do not state any actionable civil rights claim.

Notwithstanding the dismissal of this action, Plaintiff will remain liable for the unpaid balance of the $350.00 filing fee.[5] To date, he has paid only $25.58, so he still owes $324.42 at this time. Prison officials will have to deduct that amount from Plaintiff's institutional trust account, and pay it to the Clerk of Court, in the manner prescribed by 28 U.S.C. § 1915(b)(2). Because Plaintiff has failed to plead an actionable claim for relief, the dismissal of this action should count as a "strike" against him for purposes of 28 U.S.C. § 1915(g).

Lastly, the Court notes that Plaintiff has filed a self-styled motion entitled "To Bar Higher Security Transfer." (Docket No. 4.) Plaintiff apparently is seeking a preliminary injunction that would prevent him from being transferred to another prison. Because Plaintiff has failed to plead an actionable claim for relief, (for the reasons discussed above), and this action must therefore be dismissed, the Court recommends that Plaintiff's pending collateral motion be summarily denied.

## IV. RECOMMENDATION

Based upon the above, and upon all the files, records, and proceedings herein,

**IT IS RECOMMENDED** that:

---

[5] Under the PLRA, prisoners may be excused from pre-paying the full amount of the applicable filing fee before filing an action. However, 28 U.S.C. § 1915(b) clearly states that prisoners "shall be required to pay the full amount of the filing fee." In other words, prisoners are permitted to file actions without paying the full filing fee in advance, but they still remain liable for the fee. Ashley v. Dilworth, 147 F.3d 715, 716 (8th Cir. 1998) ("[t]he purpose of the [PLRA] was to require all prisoner-litigants to pay filing fees in full, with the only issue being whether the inmate pays the entire filing fee at the initiation of the proceeding or in installments over a period of time"). Nothing in the PLRA suggests that the dismissal of a prisoner's action would extinguish the ultimate obligation to pay the filing fee. See In re Tyler, 110 F.3d 528, 529-30 (8th Cir. 1997) ("the PLRA makes prisoners responsible for their filing fees the moment the prisoner brings a civil action or files an appeal").

1. Plaintiff's application to proceed <u>in</u> <u>forma</u> <u>pauperis</u>, (Docket No. 2), be **DENIED**;

2. Plaintiff's motion "To Bar Higher Security Transfer," (Docket No. 4), be **DENIED**;

3. This action be **SUMMARILY DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1);

4. Plaintiff be required to pay the unpaid balance of the Court filing fee, namely $324.42, in accordance with 28 U.S.C. § 1915(b)(2); and

5. For purposes of 28 U.S.C. § 1915(g), this action be dismissed "on the grounds that it is frivolous, malicious, or fails to state a claim on which relief may be granted."

Dated: June 25, 2008

      s/ Arthur J. Boylan
      ARTHUR J. BOYLAN
      United States Magistrate Judge

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection. This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be filed with the Court before July 11, 2008.